Milton WEIHRAUCH, Individually and as President of International Union of Electrical, Radio and Machine Workers, District Number Three, AFL–CIO, and as Vice-President of International Union of Electrical, Radio and Machine Workers, AFL–CIO, CLC, Plaintiff,

v.

INTERNATIONAL UNION OF ELECTRICAL, RADIO AND MACHINE WORKERS, AFL–CIO, CLC, Defendant.

Civ. A. No. 776–67.

United States District Court
D. New Jersey.

Aug. 1, 1967.

Thomas E. Durkin, Jr., Newark, N. J., for plaintiff.

Hannoch, Weisman, Stern & Besser, Newark, N. J., and Irving Abramson, Washington, D. C., for defendant.

## OPINION

COOLAHAN, District Judge:

Plaintiff Milton Weihrauch seeks a preliminary injunction, pending the outcome of this suit to enjoin further action of administrator trustees appointed by the defendant, International Union of Electrical, Radio and Machine Workers (hereafter "the IUE" or "the International") over one of its subordinate bodies. In addition to opposing preliminary relief, the IUE moves to dismiss the Complaint on several grounds. For the reasons discussed below both the request for a preliminary injunction and the motion to dismiss the Complaint are denied.

Even more than usual, understanding the issues presented requires at least a brief summary of the conflict's genesis in a series of extraordinary events, alleged by defendant and which are unrefuted by affidavit or testimony at this time.

The IUE is a national labor organization comprising hundreds of locals throughout the United States and Canada. Its Constitution provides for subdivision of this territory into several

subordinate Districts, each presided over by a District Counsel, a set of officers, and a group of District Trustees. Plaintiff is president of District 3, the largest, which has its own District Constitution subordinate to the International Constitution. As such, he also is ex officio a vice president of the IUE and on its Executive Board. Plaintiff's grievance stems from the IUE's appointment of two administrators to oversee the District's affairs, which he claims was in violation of the International constitution, and, therefore, also in violation of the Labor-Management Reporting and Disclosure Act, 29 U.S.C. § 462,[1] and the National Labor Relations Act, 29 U.S.C. § 185.[2]

The appointment was allegedly made in response to a request from the District Council, which arose from serious charges of union fund mismanagement and embezzlement against plaintiff and the District Treasurer. These charges in turn stemmed from inquiries by the Chairman of the District Trustees and by the International after Labor Department investigations of the District indicated some unusual occurrences.[3]

Plaintiff concedes the International constitution provides for such appointment of administrators over a local in appropriate circumstances, but he denies any parallel power of the Board, express or implied, to appoint administrators for a District. Hence, he contends the present trusteeship violates Section 462,

---

1. Section 462 provides: "Trusteeships shall be established and administered by a labor organization over a subordinate body only in accordance with the constitution and bylaws of the organization which has assumed trusteeship over the subordinate body and for the purpose of correcting corruption or financial malpractice, assuring the performance of collective bargaining agreements or other duties of a bargaining representative, restoring democratic procedures, or otherwise carrying out the legitimate objects of such labor organization."

2. Section 185, Section 301 of the Act, is the basic provision for suits, including injunctive relief where appropriate, for violations of labor matter contracts. Plaintiff claims his unconstitutional removal is a contractual breach within this statute. Section 301 clearly applies to contracts other than collective bargaining agreements. Retail Clerks Intern. Ass'n v. Lion Dry Goods, 369 U.S. 17, 82 S.Ct. 541, 7 L.Ed.2d 503 (1961). And, it has been held that an international constitution, as a political compact, was a contract between the international and subordinate bodies, whose breach was actionable under the Section. Parks v. IBEW, 314 F.2d 886 (4 Cir., 1962) cert. denied, 372 U.S. 976, 83 S.Ct. 1111, 10 L.Ed.2d 142 (1963).

3. A special committee of the Executive Board of the IUE was convened upon information that District records for the past seven years, supposedly stolen, had been destroyed by certain District officers just prior to the return date of a subpoena duces tecum served by the

Department of Labor for an inquiry under Title VI of the L.M.R.D.A. Paul Jennings, IUE President, was then informed by plaintiff that the District Treasurer had stolen some $100,000 from the funds, but plaintiff admitted no wrongdoing himself. The committee's report charged both plaintiff and the Treasurer with expenditure of thousands of dollars of union monies at race tracks and night clubs and with total theft of over $147,000, by means of false bookkeeping and other subterfuges. The Executive Board recommended the plaintiff's and the Treasurer's resignation; the initiation of their recall if they refused; and immediate action by the District Council to prevent their further access to District monies. The IUE charges plaintiff refused to cooperate with the investigation, despite public representations of cooperation, and also refused to answer the final charges of the report or to explain his behavior at the Board meeting which adopted the report as the basis of its recommendations. Further, the records' destruction was kept secret from the District Trustees who have responsibility for audit and preservation of District records and property. When the Trustees Chairman learned of a record loss and the charges, he conducted an independent investigation and, thereafter, obtained approval from the District Executive Board to convene the District Council. The Council met on July 11, 1967, and, after some Byzantine parliamentary maneuver, finally passed a resolution requesting the IUE to appoint administrators over the District.

supra, since it is neither authorized by nor made pursuant to procedures of the IUE constitution.

Moreover, he claims the appointment is a thinly veiled attempt to circumvent provisions in that constitution which limit the method of removing District officers to recall. This is deemed a breach of the IUE's contractual obligation under the constitution to the District, the locals, and the plaintiff himself.[4] See note 2, supra. Similarly, plaintiff challenges the concomitant institution of charges against the District itself, rather than an individual, as an unauthorized ad hoc attempt to bring charges indirectly against the conduct of District officers—again in violation of the constitution.

This Court's jurisdiction to issue temporary and permanent injunctive relief is based on Section 185, supra for the contractual claim, and on 29 U.S.C. § 464,[5] for the claim under Section 462.

The IUE opposes temporary relief on the ground plaintiff has shown neither irreparable injury nor likelihood of success at trial. Its motion to dismiss is based on failure to join indispensable parties; failure to exhaust administrative remedies; unclean hands precluding equitable relief; lack of jurisdiction to grant the relief sought; and existence of adequate legal remedies if a cause of action lies.

All these defenses must be weighed in the context of the two opposed characterizations of the appointment. Defendant claims it was within the Executive Board's constitutional powers and did not violate the LMRDA, 29 U.S.C. § 462, because it was in response to an urgent justified request of the District Council, rather than being imposed from above by the IUE.[6] Plaintiff replies that regardless of who suggested or requested the trusteeship, it was the Board of the IUE, not the District, which appointed the administrators, and that such unconstitutional action cannot be authorized by the Council.

In addition, plaintiff now defends his failure to answer the charges made by the special committee's report on the ground that the Executive Board's demand for response to such charges violated the aforementioned Article 24 of the IUE constitution. This is pertinent to several of the defenses.

---

4. Article 10(b) of that constitution provides for removal of District officers by means of recall through procedures specified therein. Article 24 provides for discipline, and by implication, removal, of any IUE member or officer or local officer, upon formal charges and a hearing, but specifically exempts from its provisions the IUE president and secretary-treasurer and *"any officer of a district whose removal is governed by the recall procedures in Article X of this Constitution."* Plaintiff claims the administrators' removal of himself and the District treasurer from office, though ostensibly pending prosecution of a recall proceeding, in fact accomplishes the defendant's design to remove them for improper ulterior motives and without using the constitutionally required procedure.

5. Section 464(a) provides as follows: "(a) Upon the written complaint of any member or subordinate body of a labor organization alleging that such organization has violated the provisions of this subchapter (except section 461 of this ti-

tle) the Secretary shall investigate the complaint and if the Secretary finds probable cause to believe that such violation has occurred and has not been remedied he shall, without disclosing the identity of the complainant, bring a civil action in any district court of the United States having jurisdiction of the labor organization for such relief (including injunctions) as may be appropriate. Any member or subordinate body of a labor organization affected by any violation of this subchapter (except section 461 of this title) may bring a civil action in any district court of the United States having jurisdiction of the labor organization for such relief (including injunctions) as may be appropriate."

6. The IUE stresses that the District Council "initiated and requested" the appointment, but it does not concede that the IUE Executive Board has no implied constitutional power independently to make such appointment when necessary to effectuate the policy of the LMRDA.

Finally, one must keep in mind the separate standards for a preliminary injunction on the one hand, and dismissal of the entire complaint, on the other.

## Nonjoinder of Parties

██ Plaintiff's failure to join "indispensable parties", to wit, the two administrators, is urged as fatal to the complaint. I disagree. To be sure, plaintiff seeks prevention of certain activity by the administrators, but the primary relief sought would direct the defendant International to discontinue the trusteeship, now existing under its appointment. I see no reason why relief would be ineffective merely because the administrators are not joined, since further action by them would be void once the source of their authority, namely their designation by the IUE, is terminated. Additionally, as agents of the International, who I trust will receive notice of any decree, they will be bound not to interfere with that termination under long established principles of the breach of equity. Citation of cases by the IUE on this point are inapposite and misleading.[7] The Advisory Committee's Note to 1966 Amendment of Rule 19, F.R.Civ.P. makes clear the intent to emphasize pragmatic analysis of the Court's ability to render effective judgment "by the shaping of relief * * *." Even if a party appears indispensable, moreover, the remedy is Court direction he be joined unless, as is not the case here, it has already been shown that he is not subject to its jurisdiction.

## Preliminary Relief

██ The prospective damage claimed by plaintiff is threefold: (1) that the plaintiff and unspecified others will lose pension and hospitalization rights and other unspecified benefits: (2) that the administrators have instructed banks not to honor checks drawn by plaintiff on District fund accounts and have, thereby, deprived employees of earned compensation; and (3) that the District membership has been deprived of union political rights through loss of its duly elected leader.

The vague allegation of precarious benefits falls hopelessly short of the specification required under Rule 65, F.R.Civ.P. especially in view of defendant's unopposed affidavit that the trusteeship will not affect his hospitalization or pension rights. Vars v. International Brotherhood of Boilermakers, 204 F.Supp. 241 (D.Conn.1962). Nor is there any indication plaintiff lacks an adequate legal remedy in this regard.

Considering the grave charges of theft which precipitated this dispute, the effort to stop checks drawn by the plaintiff is hardly surprising, and, on the showing thus far, I will not halt this precaution. Any immediate need for District 3 disbursements can be handled by checks drawn on District accounts by the administrators and paid pursuant to Court order, which may be submitted by the banks concerned.

Similarly, in light of the materials before me, the claim that plaintiff's removal thwarts the District membership's "popular will" is patently an inadequate basis for the extraordinary remedy of preliminary relief. See Joseph Bancroft & Sons Co. v. Shelley Knitting Mills, 268 F.2d 569 (3 Cir. 1959). Since plaintiff has shown no irreparable injury on any of these grounds, and, in addition, be-

---

7. In Flaherty v. McDonald, 178 F.Supp. 544 (S.D.Cal., 1959), the trustee was before the court and it was the International which had not been joined. The Court held that since relief was sought against a trusteeship imposed by the latter, it was indispensable. In Rizzo v. Ammond, 182 F.Supp. 456 (D.N.J.1960) a deputy trustee had been properly joined, but neither the trustees nor the International. In dicta, Judge Wortendyke deemed both of them to be indispensable but it is hardly clear that, had the International been before the court he would have felt unable to grant equitable and effective relief. The case is further distinguishable, since an affirmative accounting by the trustee was sought rather than mere cessation of his powers.

cause there is insufficient indication he will prevail to warrant preliminary relief, the motion for a temporary injunction is denied.

### Unclean Hands

■ The defense of unclean hands is applicable, but, at this posture, not dispositive. While an injunction is sought here pursuant to Federal statute, the Court's jurisdiction is a traditional equitable one, subject to the elementary maxim that one who seeks equity must not be guilty of inequity himself. Mitchell v. Robert DeMario Jewelry, 361 U.S. 288, 80 S.Ct. 332, 4 L.Ed.2d 323 (1960); Local Union No. 1055, IBEW v. Gulf Power Co., 182 F.Supp. 950 (N.D.Fla.1960); Schauffler v. Brewery and Beer Distributor, etc., Local 830, 162 F.Supp. 1 (E.D. Pa., 1958). See 2 U.S.Cong. & Admin. News, pp. 2235, 2437 (1959).

■ It goes without saying that if the charges against Weihrauch are true, it would be both inequitable and an insult to the integrity of the Court to put the fox back in the chicken coop. Cf. Gaudiosi v. Mellon, 269 F.2d 873 (3 Cir., 1959) cert. denied, 361 U.S. 902.

Although plaintiff's affidavit does not deny the charges, the present motion is for dismissal, not summary judgment, and dismissal on this ground would be premature before he has an orderly opportunity to be heard. Continental Collieries v. Shober, 130 F.2d 631 (3 Cir., 1942). The defendant urges that Weihrauch's failure to answer the Executive Board's charges at their meeting amply indicates his soiled hands; but to accept this theory is to assume defendant's view of the merits in deciding a threshold question. As noted above, Weihrauch asserts that this very attempt to bring charges against him and demand a response violated the IUE constitution and required no answer.

Before the Court puts its final imprimatur on these serious accusations, it will need a fuller record and exploration of the charges and counter-charges.

### Exhaustion of Remedies

■ The IUE next claims that Weihrauch failed to exhaust available remedies both within the Union and through the Department of Labor. The International constitution directs resort to internal union remedies before controversies are taken to the courts or the agencies. Article 24(J). Exhaustion of such remedies is an established doctrine in labor litigation, Detroy v. American Guild of Variety Artists, 286 F.2d 75, 79 (2 Cir., 1961), but it is subject to several exceptions applicable here. Harris v. International Longshoremen's Assoc., 321 F.2d 801, 805 (3 Cir., 1963); Libutti v. Di Brizzi, 337 F.2d 216, 219 (2 Cir., 1964). Exhaustion is also required by Section 101(a) (4) of the LMRDA,[8] but that provision, cited by defendant, does not apply to trusteeships attacked under 29 U.S.C. § 464. United Brotherhood of Carpenters, etc. v. Brown, 343 F.2d 872 (10 Cir., 1965); Barbour v. Sheet Metal Workers, 263 F.Supp. 724 (E.D.Mich., 1966).

As in the case of determining necessary parties, analysis of available union remedies turns on one's view of which action is actually being challenged. Since plaintiff maintains that his quarrel is with the ultimate appointment by the IUE Board, he says that his only remedy is appeal to the next International convention, not scheduled until the Fall of 1968 by which time his term will have expired. The defendant claims Weihrauch is really appealing from a decision of the District Council which "initiated and authorized" the trusteeship; that decision can be appealed directly to the IUE Board under Article 25(B).

Even assuming for the moment that the Council's role makes recourse to the Board the appropriate first step, plaintiff should not be remitted to a futile treadmill when that body has already

---

8. This Section, 29 U.S.C. § 411(a) (4) requires exhaustion in certain instances involving individual violations of the so-called "Labor Bill of Rights" provided in Section 101(a) (1).

indicated its view of its power to appoint the administrator Defendant's rejoinder that plaintiff is estopped to deny such futility is incorrect for the reason discussed above in regard to his failure to answer the Board's initial charges.

Secondly, Weihrauch is charged with bypassing the other remedy provided under Section 464(a), a complaint to the Secretary of Labor, who shall investigate and who may bring suit. The majority view among the courts is that the plain language of the statute, as well as its legislative history, indicates alternative routes whereby the aggrieved member can either sue directly or first seek redress from the Secretary. United Brotherhood of Carpenters, etc. v. Brown, supra, 343 F.2d at 880, and cases cited. Other decisions, emphasizing the exhaustion of administrative remedies, deem direct action by the member to be a supplementary remedy, available only if the complaint to the Secretary does not produce full relief. Rizzo v. Ammond, supra; Flaherty v. McDonald, supra; Cox v. Hutcheson, 204 F.Supp. 442 (D.Ind., 1962), but such decisions render the second provision of Section 464(a) superfluous, as noted by the excellent discussion of this point in Executive Bd., etc. v. IBEW, 184 F.Supp. 649 (D.Md., 1960). I agree with Judge Watkins' conclusion in the *Executive Bd.* case that a member need not first resort to the Secretary.

### Norris-LaGuardia Act

As for the second Count, defendant argues that even if this Court has jurisdiction under Section 301 of the LMRA, an injunction is precluded by Section 7 of the Norris-LaGuardia Act, 29 U.S.C. § 107. That Act's restrictions on labor injunctions were not repealed by § 301. Sinclair Refining Co. v. Atkinson, 370 U.S. 195, 82 S.Ct. 1328, 8 L.Ed.2d 440 (1962). The IUE concedes this matter does not fall within the cases set forth in Section 4 of the Norris-LaGuardia Act, in which injunctions are prohibited, but claims it is a "labor dispute" as defined in Section

13, 29 U.S.C. § 113, and, therefore, subject to the procedural requirements, not met here, of Section 7, even though jurisdiction is premised on Section 301 of the LMRA. Publishers' Assoc., etc. v. New York Mailers' Union No. 6, 317 F.2d 624 (2 Cir. 1963), vacated on other grounds.

To fall within Section 13, the dispute must not only concern "association or representation" of persons; it must also concern "terms or conditions of employment" or "negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment * *." The impact of the present dispute on such activity is too indirect and insufficiently immediate. Duris v. Phelps Dodge Copper Products Corp., 87 F.Supp. 229 (D. N.J., 1949) and Fitzgerald v. Haynes, 146 F.Supp. 735 (D.Pa., 1956) aff'd, D.C., 241 F.2d 417, both of which involved disputes as to which of two competing unions would function under a collective bargaining agreement with an employer, are easily distinguishable. A suit to enjoin a trusteeship of this nature is no more the type of dispute sought to be immunized from precipitous injunction under Section 7 of Norris-LaGuardia, than it is the type of dispute protected from any injunction by Section 4. Parks v. IBEW, supra, 314 F.2d at 923.

### Applicability of LMRDA

Finally, the defendant denies that this Court has jurisdiction under Title III of the LMRDA dealing with union trusteeships—and this, apart from the question of whether the IUE Board exceeded its constitutional power in this instance. In its view, Title III only contemplates trusteeships imposed from above by an International in conflict with the subordinate body, and does not reach consensual agreements between the two that a trusteeship is needed for the welfare of the subordinate body. It would distinguish the many cases under the Act which involved combat between the International and a local and imposition of the trusteeship by the latter. E. g. United Brotherhood of Carpenters, etc. v. Brown, supra; Flight Engineers Intern. Ass'n,

etc. v. Continental Air Lines, 297 F.2d 397 (9 Cir., 1961) cert. denied, 369 U.S. 871, 82 S.Ct. 1141, 8 L.Ed.2d 276; and Local No. 2, etc. v. International Brotherhood of Telephone Workers, 261 F.Supp. 433 (D.Mass., 1966).

Defendant argues that since the present trusteeship does not involve this evil of International dominance, but arose from the District's own request, it is not within the reach of the LMRDA.

 In effect, it suggests the following: the IUE Executive Board's recommendation to the Council that the Council should recommend a trusteeship, followed by the District Council's compliance, was sufficient authorization to prevent the appointment from being within the purview of Title III.

Under its own constitution, the District merely has the power and duty to make recommendations to the International either for the good of the District membership or the common purposes of the District and the International. Article 3(2). The defendant emphasized at oral argument that in this advisory role, the District Council functions as an arm of the IUE, hence it is unclear to what degree the Council's resolution preserved the membership's autonomy from the IUE as defendant contends. Nor is it completely clear under the case law whether every possible violation of an International's constitutional powers and duties is exempt from the LMRDA attack made here, merely because there is a formal resolution adopted by the body placed in trusteeship. Defendant's attempt to invoke the statutory presumption of validity for a trusteeship during its first eighteen months is a bootstrap approach, since Section 464(c) specifically makes such presumptions contingent upon the appointment of a trusteeship in accordance with the International's constitution, the very point here in issue.

This is not to say that the trusteeship in question did violate Section 462 of the Act; the Union has presented a strong case that it did not. However, until the facts are developed more fully, the exact nature of the process by which it was created—and the degree to which it was untainted by imposition from the IUE Executive Board—cannot be adequately tested against the IUE constitution or against the full range of situations which may be encompassed under Title III.

For all the above reasons, defendant's motion to dismiss the Complaint is also denied.

Let an appropriate Order be submitted.